**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAMONITA KING,** | : | |
| | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| v. | : | |
| | : | **No. 24-1003** |
| **CITY OF PHILADELPHIA,** *et al.*, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

# ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of the Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Civil Procedure 12(b)(6) filed by Defendants City of Philadelphia d/b/a Philadelphia Police Department, Captain Jason Smith, Lieutenant Daniel Brooks, Lieutenant Hamilton Marshmond, and Inspector Christopher Werner, and Plaintiff's response thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is hereby **DENIED** with respect to Plaintiff's Equal Protection claims against Lieutenants Brooks and Marshmond.

_____
, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMONITA KING,** | : | |
| | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| v. | : | |
| | : | **No. 24-1003** |
| **CITY OF PHILADELPHIA,** *et al.*, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS COMPLAINT**

Plaintiff Ramonita King (hereinafter, "Plaintiff" or "Det. King"), through her counsel, van der Veen, Hartshorn, Levin, and Lindheim, by Bruce L. Castor, Jr. and Kaitlin C. McCaffrey, hereby submits this response in opposition to the Motion to Dismiss Plaintiff's Complaint filed by Defendants City of Philadelphia d/b/a Philadelphia Police Department (hereinafter, the "Department"), Captain Jason Smith (hereinafter, "Captain Smith"), Lieutenant Daniel Brooks (hereinafter, "Lt. Brooks"), Lieutenant Hamilton Marshmond (hereinafter, "Lt. Marshmond"), and Inspector Christopher Werner (hereinafter, "Insp. Werner," collectively with the Department, Captain Smith, Lt. Brooks, and Lt. Marshmond, "Defendants").

**BACKGROUND**

Detective Ramonita King has dutifully served the Philadelphia Police Department for more than three decades, working as a detective since 1998. During her considerable tenure with the Department, Det. King found herself the target of gender-based discrimination on numerous occasions, but repeatedly tried to move past these incidents based on her knowledge of how the Department handles such complaints and her reasonable and justifiable fear of retaliation from having witnessed others similarly situated to her prior to this complaint. However, shortly after

1

her transfer to the Philadelphia Police Department—Homicide Unit (hereinafter, "Homicide Unit"), Det. King could no longer ignore the rampant sexism and retaliation directed toward her, her female colleagues, and anyone who chose to advocate for them.

When two other detectives filed a complaint alleging gender-based discrimination and retaliation against several supervisory officers within the Homicide Unit, Det. King became a target due to her friendship with this pair of detectives, and her co-worker's perceived belief of her involvement with their joint complaint. Det. King regularly spoke to these detectives about the discriminatory treatment she encountered and was forced to endure in the Homicide Unit, and the complaining detectives, without consulting Plaintiff, brought these issues to light as part of their own formal grievances. Det. King attempted to persuade the involved supervisors that she did not intend to make any trouble for the Unit, but her supervisors remained unconvinced. Over the next two years, Det. King found herself the victim of various false reports, intimidation tactics, and adverse employment actions intended to both discredit her testimony and dissuade her from pursuing matters further, leaving her with no option but to file the instant suit.

Two supervisory officials within the Homicide Unit, Lts. Brooks and Marshmond, played a crucial role in Det. King's gender-based harassment and discriminatory treatment. Both supervising officers facilitated the "boys club" atmosphere within the Unit and catered to the interests of the male detectives under their supervision at the expense of their female counterparts. For example, Lt. Brooks reassigned Det. King's files to one of her male counterparts, Detective Joseph Murray, to ensure that she would be able to sit at a desk and answer telephone calls rather than investigate murder cases on the street. Lt. Brooks further assisted Det. Murray in spreading false information to the families of murder victims in cases Det. King was assigned to investigate, reducing the family members' confidence in Det. King thus tarnishing her reputation, and resulting

2

in at least one meritless Internal Affairs Division ("IAD") complaint being filed against her. Lt. Marshmond called Det. King into his office on multiple occasions to berate her and question Det. King's ability to perform her job because she could not get along with the "B-Boys," referring to the male detectives on the B-Squad of the Homicide Unit. Lt. Marshmond also filed a frivolous IAD complaint against Det. King on behalf of one of the male detectives under his supervision, Detective James Crone. Almost immediately thereafter, Det. Crone received a transfer to a more favorable position, which he received in exchange for allowing Lt. Marshmond to file the complaint against Det. King on his behalf. These are just a few of the instances of clear gender-based discrimination and mistreatment Det. King suffered at the hands of her supervising officers during her tenure with the Homicide Unit, as detailed throughout her Complaint.

## LEGAL ARGUMENT

### I. Standard of Review under Rule 12(b)(6)

"Pleadings must be construed as to do justice." *F.C.R.P.* 8(e). Except under certain limited circumstances, a complaint need only comply with Rule 8(a)(2), which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Kuhns v. Allentown*, 636 F.Supp.2d 418, 425 (E.D.Pa. 2009)(quotations omitted). When reviewing pleadings for legal sufficiency under Rule 12(b)(6), the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Nelson v. Temple Univ.,* 920 F.Supp. 633, 635 n.2 (E.D.Pa. 1996)(citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)). Pleadings need only state sufficient facts to raise a reasonable expectation that discovery will reveal evidence with respect to the element of the alleged offense. *Phillips v. County of*

3

*Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  A complaint should not be dismissed merely because it appears unlikely that the plaintiff will be able to prove the facts asserted or prevail on the merits.  *McTernan v. City of York, PA,* 564 F.3d. 636, 646 (3d Cir. 2009).

## II.     Equal Protection Claim against Lieutenants Brooks and Marshmond

"The Equal Protection Clause requires that all people similarly situated be treated alike." *Gilliam v. Holt*, 188 Fed.Appx. 79 (3d Cir. 2006).  To state a §1983 equal protection claim, a plaintiff must establish that "she received different treatment than other similarly situated persons and that the disparate treatment was based on her protected class status." *Kasper v. Cnty. of Bucks*, 514 F.App'x 210, 214 (3d Cir. 2013).  A defendant will be found to have personal involvement in the discrimination when he or she "engaged in the purposeful discriminatory conduct himself or knowingly acquiesced to it."  *Moore v. Solanco Sch. Dist.*, 471 F.Supp.3d 640, 660 (E.D.Pa. 2020)(quotations omitted).

As an initial matter, Defendants improperly categorize Plaintiff's allegations as stating a claim under the equal protection "class of one" theory.  The "class of one" theory allows individuals whose purported discrimination does not fit within a protected characteristic to bring a claim by establishing that "(1) the defendant treated [her] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)(quotations omitted). Plaintiff very clearly stated in her complaint that Defendants discriminated against her based on her gender, a well-established protected characteristic, and therefore analysis under the "class of one" theory is an inappropriate strawman Defendants then sought to knock down.

Plaintiff set forth a variety of factual allegations which would allow the Court to find or infer that Lts. Brooks and Marshmond subjected her to disparate treatment based upon her gender. Defendants made a transparent attempt to mitigate the allegations against Lts. Brooks and Marshmond; however, considering these allegations in the context of the entire complaint, it is clear the key role these supervisory officers played in Plaintiff's harassment and discriminatory treatment. Defendants first contend that Plaintiff's only allegation against Lt. Brooks relates to the "cheese" comment, which Det. King interpreted as calling her a "rat." This comment, when considered in the context of the entire complaint (in the light most favorable to the Plaintiff), demonstrates Lt. Brooks' facilitation, involvement, and awareness of the hostile work environment as a supervisory officer. However, contrary to Defendants' assertions, this was not the only allegation Plaintiff lodged against Lt. Brooks. Plaintiff also alleged that Lt. Brooks reassigned her case files to a male detective, Detective Joseph Murray, so that she could continue working the desk. *See*, Complaint ¶44. Plaintiff further sets forth in her Complaint that Lt. Brooks and Det. Murray made statements to the family of the decedent in the reassigned case, which she believes must have been false or misleading, causing the family to file a baseless internal affairs complaint against Det. King. *Id*. Det. King subsequently learned that Det. Murray, presumably under the guidance of Lt. Brooks, contacted the families of the victims in her cases to spread vicious lies about her in order to prompt additional complaints. *Id* at 69-71.

Similarly, Defendants understate the significance of Plaintiff's allegations against Lt. Marshmond, contending that Plaintiff merely alleged that Lt. Marshmond relayed a complaint made by one of his subordinates to IAD. Plaintiff did not allege that Lt. Marshmond *merely* relayed a complaint, she pled facts sufficient to contend that Lt. Marshmond colluded with or at a minimum influenced Det. Crone, a male detective whom he supervised, to file the "avocado"

5

complaint against Det. King in exchange for what, in effect, was a promotion to the fugitive unit. *See*, Complaint ¶78-79. Defendants also ignore the two separate occasions on which Plaintiff contends Lt. Marshmond called her into his office to berate her, belittle her, and accuse her of getting "special treatment," and suggest that she must be responsible for her poor relationship with her male counterparts. *Id*. at ¶51-52, ¶67-68. To further emphasize the point, Captain Smith specifically confided in Det. King that Lt. Brooks and Lt. Marshmond were making plans to retaliate against her due to their belief that she took part in Dets. Slobodian and Leahy's IAD/EEO complaint. *See*, Complaint ¶53. Finally, Lt. Marshmond also failed to step in as a supervisory officer when Det. King complained that she was being antagonized by her male counterparts, namely Det. Crone, the very individual with whom Lt. Marshmond colluded to file an IAD complaint against her. *See*, Complaint ¶81-82.

Plaintiff's Complaint sets forth a detailed history of the abuse she suffered at the hands of the supervisory officials within the Homicide Unit, namely Lts. Brooks and Marshmond. The factual allegations set forth in Plaintiff's Complaint make clear that Lts. Brooks and Marshmond not only knew of and acquiesced to the gender-based discrimination running rampant through the Unit, but actively participated in perpetuating such unlawful mistreatment. As such, this Honorable Court should deny Defendants' request to dismiss Plaintiff's claims.

### III. Punitive Damages against the City

Plaintiff consents to dismissal of her claim for punitive damages against the municipal entity.

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully submits before this Honorable Court that Defendants have failed to meet their burden of establishing that Plaintiff's Equal Protection

claims against Lieutenants Brooks and Marshmond fail to set forth a claim upon which relief may be granted. Should the Court be disinclined to deny Defendants' motion on the papers, Plaintiff respectfully requests oral argument.

                                                    Respectfully Submitted,

Date: May 13, 2024                By:    *Bruce L. Castor, Jr.*
                                                    Bruce L. Castor, Jr.
                                                    I.D. No. 46370
                                                    Kaitlin C. McCaffrey
                                                    I.D. No. 329960
                                                    Attorneys for Plaintiffs
                                                    1219 Spruce Street
                                                    Philadelphia, PA 19107
                                                    P: (215) 546-1000
                                                    F: (215) 546-8529
                                                    E: bcastor@mtvlaw.com