IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMONITA KING | : | |
| | : | CIVIL ACTION |
| v. | : | No. 24-1003 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

McHUGH, J.                                                                                              July 22, 2024

## MEMORANDUM

This is an employment discrimination case brought by a female detective against her former unit supervisors. Plaintiff Ramonita King sets forth seven counts against the City of Philadelphia's Police Department and four officers comprising the Homicide Unit's leadership. Defendants now seek to dismiss Count I as to two of the officers, Lieutenants Daniel Brooks and Hamilton Marshmond,[1] which alleges a violation of King's Fourteenth Amendment right to equal protection based on her sex. Defendants contend that the allegations against them are not rooted in Plaintiff's gender, leading them to engage in a lengthy discussion attacking the "class of one" theory of liability. I do not read the Complaint against these Defendants so narrowly. Consequently, Defendants' partial Motion to Dismiss will be denied.[2]

**I.      Facts as Pleaded**

Plaintiff Ramonita King served in the Philadelphia Police Department Homicide Unit as a Detective from December 2019 until her reassignment in January 2023. Compl. ¶¶ 32, 102. In

---

[1] King filed Count I against all four individual defendants: Captain Jason Smith, Inspector Christopher Werner, Lieutenant Daniel Brooks, and Lieutenant Hamilton Marshmond. But Defendants' Motion to Dismiss only seeks to dismiss Lieutenants Brooks and Marshmond.

[2] Plaintiff consents to the dismissal of the claim for punitive damages against the City of Philadelphia. *See* Mot. to Dismiss, ECF 10 at 12-13; Resp. to Mot. to Dismiss, ECF 11 at 6.

August 2021, she transferred from squad "1-A" to "1-B," where her supervisors included Defendants Captain Jason Smith, Lieutenant Hamilton Marshmond, and Lieutenant Daniel Brooks. *Id.* ¶¶ 38-39. During her tenure in the Homicide Unit, Ms. King alleges she was subject to disparate treatment based on her sex because the work environment encouraged treating women as "inferior."[3] *Id.* ¶ 19.

King describes a pattern of repeated discrimination because of her gender, beginning when she was first assigned to the Homicide Unit. For instance, her supervisors did not assign her a partner for more than two years, despite twelve other detectives during this time receiving a partner immediately upon arrival. *Id.* ¶ 34. Further, King claims the Homicide Unit allowed male detectives, but not women, to choose their partners. *Id.* ¶ 23. Due to a policy requiring street investigations to be done in pairs, King was unable to conduct these investigations unless a male colleague agreed to work with her, or a supervisor ordered him to do so. *Id.* ¶¶ 25, 35-36. Because of her inability to find a partner, King transferred to squad 1-B in 2021, where a male detective agreed to be her partner. *Id.* ¶ 43. Her supervisors in squad 1-B were Lieutenants Brooks and Marshmond. *Id.* ¶ 39. After her transfer, her intended partner "changed his mind" about working with her, and her supervisors did not reassign her a new partner. *Id.* ¶¶ 40, 43. Instead, Lieutenants Brooks and Marshmond assigned her clerical and administrative duties, tasks "that supervisors did not require of her male counterparts." *Id.* ¶ 40.

Although the timing is unclear, King also alleges that Marshmond and Brooks planned to retaliate against her because they suspected she was involved in another gender discrimination

---

[3] During King's employment with the Homicide Unit, female detectives made up six out of seventy-seven total detectives, with only three participating in street operations. Compl. ¶ 21.

complaint against them brought by a female detective in September 2021.  *Id.* ¶¶ 48, 53.  Their purported "vendetta" prompted Captain Smith to warn King about it repeatedly.  *Id.* ¶ 54.  In February 2022, King expressed concerns about the treatment of women in the Homicide Unit, to which Captain Smith responded by "forc[ing]" her to file a complaint with the Equal Employment Opportunity Office (EEO).  *Id.* ¶¶ 55-58.  After filing the complaint, King alleges that she feared the Lieutenants "would make her life in the Homicide Unit unbearable" for expressing concerns about the treatment of women.  *Id.*

As to Lieutenant Marshmond, Ms. King makes several additional allegations.  She alleges that in two separate meetings, Marshmond "belittled" her because she highlighted the disparate treatment of women in the Department.  Resp. to Mot. to Dismiss, ECF 11 at 6.  She pleads that this first occurred when she requested a transfer back to squad 1-A because of the male detectives who refused to work with her, leading Marshmond to resent her and spread a rumor she could not get along with the "B-Boys."  Compl. ¶¶ 45, 50-52.  The second instance involved a meeting with Marshmond, taking place sometime after she filed the EEO complaint.  *Id.* ¶¶ 66-67.  At the meeting, Marshmond accused King of receiving "special treatment" after another female detective had reported Lieutenant Brooks for making a snide remark about King.  *Id*. ¶¶ 67-68.  King further alleges that Lieutenant Marshmond knowingly facilitated filing a false Internal Affairs Division (IAD) complaint accusing King of harassment by acting inappropriately toward a male detective with an avocado.  *Id.* ¶¶ 73-74, 78.  This IAD complaint is what ultimately led to King's reassignment.  *Id.* ¶¶ 85-86, 93, 96, 102.

As to Lieutenant Brooks, King also alleges he reassigned at least one of her cases to a male detective and instructed male detectives to spread lies to members of the public so that they would file complaints against her.  *See* Compl. ¶¶ 44, 69-71; Resp. to Mot. to Dismiss, ECF 11 at 5.  King

further alleges that after she filed the EEO complaint, Brooks insinuated she was a "rat" when he announced, "Who wants cheese?" Compl. ¶ 63.

## II.     Standard of Review

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.    Discussion

To establish a claim under 42 U.S.C. § 1983 claim, "a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted). To state a 14th Amendment claim, a plaintiff must allege: (1) she belongs to a protected class; (2) she was treated differently from similarly situated individuals; and (3) the treatment was based on her membership in the protected class. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) (citations omitted).

The discriminatory treatment alleged must be "purposeful." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990), *superseded in part by statute*, Civil Rights Act of 1991). To demonstrate "purposeful" discrimination, a plaintiff must plead facts showing an intent to discriminate, which can be alleged through circumstantial evidence, including allegations of "disproportionate impact." *Batson v. Kentucky*, 476 U.S. 79, 93 (1986). Here, to survive a motion to dismiss, King must plead facts demonstrating Lieutenants Brooks and Marshmond intentionally discriminated against her because of her gender, causing her to be treated differently than other male detectives in her unit.

Defendants' primary argument is that Plaintiff does not allege she is part of a protected class and instead relies on a "class of one" theory for liability, which they contend is no longer legally viable. Mot. to Dismiss, ECF 10 at 11. Class of one is a theory that may apply in limited circumstances when the discriminatory treatment is not tied to a class, and there is no rational basis for treating a plaintiff "differently from others similarly situated." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). I see no need to address the continued validity of this theory of liability because I do not view Plaintiff's allegations against these Defendants as being so narrow in scope.

Ms. King pleads that Lieutenant Brooks and Marshmond, as her 1-B supervisors, denied her privileges of other male detectives, like the privilege to choose a partner, be assigned a partner, and perform administrative tasks on a voluntary basis. She also repeatedly alleges that this disparate treatment was *because of* her sex. For instance, King describes a work environment where her supervisors, Lieutenants Brooks and Marshmond, had a "vendetta" against her because they believed she was filing complaints about how women were treated in the Homicide Unit, and as a result, took action to treat her differently from male detectives.

In addition, Lieutenant Marshmond allegedly blamed her for the unwillingness of her male colleagues to work with her and spread a rumor that she could not get along with the "B-Boys." She claims he also facilitated the filing of a false IAD complaint against her. Lieutenant Brooks allegedly reassigned at least one of her cases to a male detective and instructed others to spread lies about her cases to encourage complaints to be filed against her. Assuming the facts pled in the Complaint as true, King has sufficiently alleged disparate treatment based on her sex from both Lieutenant Marshmond and Lieutenant Brooks, which suffices to state a claim under the Equal Protection Clause of the 14th Amendment.

**IV.    Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss Count I of the Complaint will be denied. Plaintiff's claim for punitive damages against the City will be dismissed by consent. An appropriate order follows.

/s/ Gerald Austin McHugh  
United States District Judge